# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 Proceedings |
| | ) | |
| **AHMAD WALI MAILATYAR and** | ) | Case No: 2:17-bk-13538-DPC |
| **EDYTA KAMILA MAILATYAR,** | ) | |
| | ) | **UNDER ADVISEMENT RULING** |
| Debtors. | ) | **REGARDING DEBTORS'** |
| | ) | **HOMESTEAD EXEMPTION** |
| | ) | |
| | ) | [NOT FOR PUBLICATION] |
| | ) | |

Before the Court is Timothy R. Wright's ("Wright") objection[1] ("Homestead Objection") to Ahmad Wali Mailatyar's ("Mr. Mailatyar") and Edyta Kamila Mailatyar's ("Ms. Mailatyar") (collectively "Debtors") claimed homestead exemption. This Court finds Wright has carried his burden of proof. Wright's Homestead Objection is hereby sustained. Debtors' claimed homestead exemption on the home located at 11 East Venado Drive, New River, Arizona ("Venado Property" or "New River Property") is hereby denied. However, the Court finds the Debtors do have a valid homestead exemption in the residence described as 7712 East Journey Lane, Scottsdale, Arizona ("Journey Property" or "Scottsdale Property").[2]

---

[1] DE 29. "DE" references a docket entry in the administrative file in this case.

[2] This Order sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Rules of Bankruptcy Procedure.

## I. BACKGROUND

1. On November 14, 2017 ("Petition Date"), Debtors filed a voluntary chapter 13 bankruptcy petition.

2. Wright filed an Emergency Motion to Convert[3] Debtors' chapter 13 to a chapter 7, claiming the Debtors did not qualify for a chapter 13 under § 109(e)[4] of the Code. The Court agreed with Wright and entered its Under Advisement Ruling on March 30, 2018.[5]

3. Debtors filed a motion to convert their chapter 13 case to a chapter 11. That motion was granted on April 3, 2018.[6]

4. Debtors filed their original schedules on November 14, 2017[7] and amended their schedules on March 8, 2018.[8] Schedule C claimed a $150,000 homestead exemption on the New River Property.

5. On January 26, 2018, Wright filed his Homestead Objection.[9] Debtors filed a response ("Response")[10] and each of the Debtors filed declarations[11] in support of their Response. Wright filed a motion to strike Debtors' Response[12] and filed a reply[13] in support of his Homestead Objection.

6. On April 2, 2018, the Court held a hearing on the Homestead Objection. Recognizing the homestead briefing and oral arguments of counsel pointed to material factual disputes, the Court required the parties to file a joint pretrial statement.[14]

---

[3] DE 30.
[4] Unless indicated otherwise, statutory citations herein refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.
[5] DE 87.
[6] DE 93.
[7] DE 1.
[8] DEs 62 and 63.
[9] DE 29.
[10] DE 41.
[11] DEs 42 and 43.
[12] DE 55.
[13] DE 56.
[14] DE 177, filed on June 29, 2018.

7. The Court conducted a trial of this matter on July 6, 2018. Following the trial, Wright and the Debtors filed their supplemental briefs[15] after which time the Court took the homestead issue under advisement.

8. Debtors' original schedules[16] valued the Scottsdale Property at $439,000 and the New River Property at $349,000. Although the Debtors amended their schedules, the stated values of these two residential properties did not change. Debtors' original schedules[17] reflected the following debts secured by these residences:

**Schedule D - Secured Debt**

| | |
|---|---|
| Roundpoint Mortgage (New River Property) | $228,872.82 |
| Rushmore Loan Management (Scottsdale Property) | $403,943.43 |
| Timothy R. Wright (Scottsdale Property-2nd Lien Position) | $262,295.56 |

None of these secured claims were listed as contingent, unliquidated, or disputed.

9. Debtors' Amended Schedule D[18] reflects the following secured debts:

**Amended Schedule D - Secured Debt**

| | |
|---|---|
| Roundpoint Mortgage (New River Property) | $230,697.86 |
| Rushmore Loan Management (Scottsdale Property) | $406,594.52 |
| Timothy R. Wright (Scottsdale Property-2nd Lien Position) | $262,295.56[19] |

None of these secured claims are listed as contingent, unliquidated or disputed.

10. Wright's claim arises out of a state court judgment[20] in the amount of $262,295.26[21] dated June 7, 2017. The judgment was recorded in Maricopa County,

---

[15] DEs 183 ("Wright's Closing Brief") and 184 ("Debtors' Closing Brief").
[16] DE 1.
[17] DE 1 at Schedule D.
[18] DE 62.
[19] This is the amount of the unavoidable pre-bankruptcy judgment lien recorded by Wright.
[20] *See* Ex. I.
[21] This Court calculates the amount of the judgment against Debtors, as follows: monetary damages of $88,190, plus punitive damages of $20,000, plus attorneys' fees of $140,758.50 (the Court believes that attorneys' fees

1 Arizona on June 8, 2017. The parties agree the Wright judgment lien is not avoidable.[22]

2     11.    If the Debtors' homestead exemption claimed on the New River Property stands, there is no equity in that property to which the Wright judgment lien could attach.[23] In that instance, Wright would be entitled to stay relief on the Scottsdale Property.

    12.    If, however, the Court finds the Scottsdale Property is the Debtors' homestead, Wright's judgment lien would attach to all the equity above the first lien on the New River Property and Wright would be entitled to stay relief on the New River Property.

## II. <u>JURISDICTION</u>

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334.

## III. <u>ISSUE</u>

Whether the Debtors' homestead exemption is properly claimed on the New River Property or the Scottsdale Property?

## IV. <u>ANALYSIS</u>

  A. **Applicable Law.**

On the Petition Date, an estate was created in this bankruptcy.[24] The bankruptcy estate includes both the New River Property and the Scottsdale Property. Under § 522(b),

---

awarded for Count IV are subsumed in the attorneys' fees awarded for Count I) and costs of $13,346.76. This amount is only 30 cents less than the amounts Debtors list in their original and amended Schedule D.

[22] In continued pursuit of Wright's claim against the Debtors, Wright commenced adversary case 2:18-ap-163-DPC seeking to hold Wright's claim nondischargeable under § 523. Wright also commenced adversary case 2:18-ap-259-DPC seeking to deny Debtors' discharge in its entirety under § 727.

[23] Value of $349,000 less 1st lien of $230,697.86 = equity of $118,302.14, an amount less than the Arizona $150,000 homestead exemption claimed by the Debtors.

[24] § 541(a) of the Code.

a debtor is permitted to exempt certain property of the estate from creditor claims. § 522(b)(2) permits a state to opt out of the federal exemption scheme. Arizona has done so.[25]

Homestead exemption claims in Arizona are governed by A.R.S. § 33-1101, *et seq*. Those statutes state, in pertinent part, as follows:

> **§ 33-1101. <u>Homestead exemptions; persons entitled to hold homesteads.</u>**
>
> A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following:
> 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person *resides*.
> (emphasis added).
> . . .
>
> B. Only one homestead exemption may be held by a married couple or a single person under this section. The value as specified in this section refers to the equity of a single person or married couple. . . .
>
> C. The homestead exemption, not exceeding the value provided for in subsection A, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. Only one homestead exemption at a time may be held by a person under this section.

---

[25] A.R.S. § 33-1133(B).

### § 33-1102. Exemption by operation of law; designation of multiple properties on creditor's request; recording.

A. A person who is entitled to a homestead exemption as prescribed by § 33-1101 holds that exemption by operation of law and no written claim or recording is required. If a person has more than one property interest to which a homestead exemption may reasonably apply, a creditor may require the person to designate which property, if any, is protected by the homestead exemption.

. . .

### § 33-1104. Abandonment of homestead; encumbrance of homestead.

A. A homestead may be abandoned by any of the following:
1. A declaration of abandonment or waiver.
2. A transfer of the homestead property by deed of conveyance or contract for conveyance.
3. A permanent removal of the claimant from the residence or the state. A claimant may remove from the homestead for up to two years without an abandonment or a waiver of the exemption.

B. A declaration of abandonment or waiver shall be executed by the claimant and acknowledged. A declaration of abandonment or waiver is effective only from the time of its recording in the office of the county recorder in the county in which the homestead property is located.

C. This article shall not be construed to repeal the provisions of section 25-214, subsection C, pertaining to the acquisition, conveyance or encumbrance of community property.

D. Any recorded consensual lien, including a mortgage or deed of trust, encumbering homestead property shall not be subject to or affected by the homestead claim or exemption.

E. Notwithstanding the provisions of subsection A, paragraph 2 of this section, a transfer of the homestead property by deed of conveyance or contract for conveyance under a trust, as defined in section 14-1201, in which the claimant retains the power to administer and revoke the trust shall not constitute an abandonment of the homestead.

A debtor's claimed exemption is presumptively valid. *In re Carter,* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999). The Court must liberally construe the claimed exemption in favor of the Debtors. *In re Renner*, 822 F.2d 878, 880 (9th Cir. 1987)*; In re Lee*, 889 F.3d 639, 646 (9th Cir. 2018); *In re Garcia*, 168 B.R. 403, 408 (D. Ariz. 1994). The burden of proof, which is by a preponderance of the evidence, lies with the objecting party to show that the exemption is not valid. Fed. R. Bankr. P. 4003(c) and *In re Diaz*, 547 B.R. 329, 336 (B.A.P. 9th Cir. 2016). Here, Wright is the objecting party so he bears the burden of persuasion.

In reviewing Wright's objections to the Debtors' claimed homestead exemption, this Court must focus on the facts as they existed on the Petition Date. *White v Stump*, 266 U.S. 310, 313-14 (1924). This is referred to as the "snap shot rule." *In re Earl*, 705 F. App'x 584, 585 (9th Cir. 2017) (citing *id.* at 313).

Because a homestead exemption necessarily implicates where a debtor resides on the date a bankruptcy is filed, courts evaluate a debtor's intentions as they existed at the time the petition was filed. *In re Konnoff*, 356 B.R. 201, 204–05 (9th Cir. BAP 2006). The term "reside" under A.R.S. § 33-1101(a) is generally construed to require "at least the physical presence of the individual claiming a homestead exemption." *In re Elia*, 198 B.R. 588, 597 (Bankr. D. Ariz. 1996). However, neither occupancy on the date of the petition nor continued occupancy of the home is required to establish a homestead for exemption purposes. *In re Calderon*, 507 B.R. 724, 730 (9th Cir. B.A.P. 2014) (Where Debtor's property was rented out at the filing of his bankruptcy and he stated a vague intent to return to it, the Court held that in claiming the exemption he was not required to be present in the residence at the time of the filing). Where a debtor is not physically present in the claimed homestead at the time of a bankruptcy filing, the court must inquire into the debtor's intent. If the debtor has the intent to reside elsewhere, the homestead has been abandoned. The question, then, is whether and when the Debtors abandoned

the New River Property as their homestead pursuant to A.R.S. § 33-1104.

To determine whether a debtor resides in a property for homestead purposes, courts consider physical occupancy and intent to reside there. "Physical occupancy on the filing date *without* the requisite intent to live there, is not sufficient to establish residency." *In re Gilman*, 887 F3d 959, 965 (9th Cir. 2018) (emphasis added) (citing with approval *In re Diaz*, 547 B.R. 329, 336 (9th Cir. B.A.P. 2016)).

In reviewing Arizona's homestead exemption statutes, the Court in *Calderon* held that:

> On the petition date, if the debtor has been living elsewhere for less than two years, only evidence of a clear intent of permanent removal will suffice to permit the bankruptcy court to find that the debtor has abandoned his homestead exemption under Arizona law. On the other hand, on the petition date, if the debtor has been living elsewhere for two years or more, then the debtor is presumed to intend for the removal to be permanent, and only evidence of a clear intent for the removal to be temporary will overcome that presumption.

*In re Calderon*, 507 B.R. at 732.

The crucial question for this Court to decide is, whether the Debtors (or even one of the Debtors) intended *on* the Petition Date, that the New River Property be their homestead.

## B. The Court's Findings of Fact

The Debtors bought the Scottsdale Property in 1997 and lived there continuously until 2013. During this time period, the Scottsdale Property was their exempt homestead. This fact is not in dispute.[26]

The Debtors bought the New River Property in 2013 and lived there until May or June 2016. During this time period, the New River Property was their exempt homestead.

---

[26] *See* the Joint Pretrial Statement (DE 177) at page 10.

During that timeframe they leased the Scottsdale Property to a third party on a fairly long-term lease. These facts are not in dispute.[27]

The Debtors have three children, Sara (age 21), a middle school child[28] (age 14), and an elementary school child (age 10). Sara testified at the July 6 trial. She is a student at Arizona State University. She lives at the Scottsdale Property and has been living there since the family moved to that home in May or June 2016. The Court finds that Sara is articulate and smart. However, she was under obvious pressure and extreme discomfort in having been called to testify in her parents' bankruptcy case. The Court finds the Debtors manipulated their daughter into testifying in a manner tailored to their homestead contentions. The Court finds Sara's testimony unreliable and lacking in credibility. The Court finds that Sara's testimony was at the direction of, and solely for the benefit of, her parents in their quest to claim as their homestead the property with the greatest possible exemption amount.

Debtors both testified that, on the Petition Date, they intended to reside at the New River Property. The Court carefully listened to and studied the Debtors during their testimony and finds their testimony lacking in credibility. Mr. Mailatyar's testimony was well rehearsed, but far too insincere and overstated. He knows full well that his financial interests would be best served if the equity in the New River Property is protected by a homestead exemption. His testimony was tailored to fit that interest even though he has lived in the Scottsdale Property, works nearby, and leases out the New River Property for short-term rentals. The Court did not believe his claim that he often spends weekends at the New River Property. The Court did not believe that either of the Debtors intended on the Petition Date to reside in the New River Property, or even that the Debtors actually intended to live there at some future time. Like the State Court, this Court finds

---

[27] *See* the Joint Pretrial Statement (DE 177) at page 10.
[28] Pursuant to Bankruptcy Rule 9037, the Court will not name these minor children in this Ruling.

Mr. Mailatyar's testimony lacking in credibility.

Since the New River Property is frequently leased on a short-term basis, the Debtors must periodically travel to that property to handle their landlord obligations. Their limited presence at the New River Property is not mistaken by this Court as an intent to reside there. Except for the furniture and appliances needed to provide adequate accommodations for short-term tenants, the Debtors' personal property (especially their valuable property) is located at the Scottsdale Property.

All the Mailatyars took pains to describe tension in the Debtors' marriage. The Court does not doubt that Ms. Mailatyar is irritated by Mr. Mailatyar's conduct which resulted in the Wright judgment and the filing of this bankruptcy. However, both Mr. and Ms. Mailatyar allegedly work together in adjoining offices,[29] they both sleep at the Scottsdale Property, and they raise their minor children in that same home. Prior to the Petition Date, virtually all their mail went to the Scottsdale Property, including their many joint bills, bank account statements, and investment account statements. Debtors have been married for 25 years and neither of them intend to pursue a marital separation or divorce. Importantly, in her 2017 deposition,[30] Ms. Mailatyar indicated she "lived at the Scottsdale Property." This was her testimony *before* the homestead exemption was at issue and *before* it was clear to the Debtors that her 2017 testimony was against their newly realized best interests. The Court finds Ms. Mailatyar's prior testimony was truthful and more credible than her post-Petition Date testimony.

In May or June 2016, the Scottsdale Property lease expired after which time the Debtors moved out of the New River Property and back into the Scottsdale Property. The Court finds that when the Debtors moved from the New River Property, Debtors intended

---

[29] Mr. Mailatyar arranged for Ms. Mailatyar to be placed on the payroll so the company's health insurance could be obtained by her. The Court has serious doubts about whether Ms. Mailatyar does much or any work in return for her salary and insurance coverage. The Court suspicions Mr. Mailatyar's salary was reduced so the company could pay Ms. Mailatyar and place her on the insurance rolls.
[30] Edyta Mailatyar Dep., Feb. 16, 2017, Ex. 36.

to abandon that property as their homestead and reestablished their homestead in the Scottsdale Property. Mr. Mailatyar testified that, after moving out of the New River Property, he intended to remain in the Scottsdale property until his youngest child completed high school in Scottsdale. Approximately 17 months later, the Debtors filed bankruptcy. Their youngest child was then 10 years old and had 8 ½ years left before completing high school. In other words, Mr. Mailatyar's testimony revealed that when the Debtors moved back to the Scottsdale Property in the summer of 2016, he intended to reside in the Scottsdale property for the next 10 years. The Court finds that Ms. Mailatyar had the same intentions. This Court finds that when the Debtors moved in the summer of 2016, neither of the Debtors intended to ever move back to the New River Property. Their intentions had not changed by the Petition Date.

To put this in the context of the presumptions referenced in *Calderon*, *supra*, the Debtors had not resided in the New River Property for at least 17 months *before* the Petition Date and the Debtors did not intend to return to the New River Property for at least 8 ½ years *after* the Petition Date. That is a 10 year intended absence from the New River Property. Consistent with *Calderon*, this Court finds the Debtors needed to demonstrate a clear intent to overcome the presumption that the Debtors intended to abandon the New River Property as their homestead for a period of 10 years when the Debtors' moved from the New River Property and relocated to the Scottsdale Property. The Debtors have not demonstrated a clear intent to maintain the New River Property as their homestead. Moreover, in construing both the Debtors' relocation to the Scottsdale Property in the summer of 2016 and Mr. Mailatyar's claimed intent to return to New River 10 years later, neither indicate credible evidence of a New River homestead.

Even if *Calderon* could be read to rigidly fix at two years (prior to a bankruptcy filing) the time in which a homestead declarant must be removed from their homestead in order for the presumption of abandonment to arise, this Court nevertheless finds

Wright introduced clear proof to the Court evidencing the Debtors' abandonment of the New River Property as their homestead.

When the Debtors moved out of the New River Property in May or June 2016, it was because Ms. Mailatyar did not like New River.[31] The New River Property is a long distance from the place where the Debtors worked. The Scottsdale Property is a short five minutes from their office. Most significantly, the Scottsdale Property is within walking distance of the Debtors' youngest child's elementary school and very near their other child's middle school. Ms. Mailatyar is the family member who principally handles driving for their younger children. She is also the primary shopper for all household supplies and food. The Court finds the child rearing responsibilities in the Mailatyar family are handled predominantly by Ms. Mailatyar. It defies reason to suggest she would live in distant New River when all her relationships, energy, and life's work are centered in Scottsdale. Moreover, the Court does not believe Ms. Mailatyar ever intended to return to New River, an outlying Maricopa County area, which she disliked.

Debtors' Closing Brief contends that:

> the most powerful evidence presented by the Debtors as to their intent to declare the Venado [New River] Property their homestead was the schedules filed on the petition date that set forth in Schedule C the Venado [New River] Property as their homestead.[32]

If Debtors' argument is taken to its logical extreme, an exemption claimed on the same date as a debtor's bankruptcy filing could never be successfully challenged. The Court finds the Petition Date homestead exemption declared by the Debtors in this case was false. This Court finds that neither of the Debtors had the intention that the New River Property be their homestead on the Petition Date.

Debtors argue that Wright concedes Ms. Mailatyar lives at the New River Property

---

[31] *See* Ex. EM2, where Ms. Mailatyar testified that: "I just didn't like New River."
[32] Debtors' Closing Brief at 7.

because Wright notes on page 4 of the Joint Pretrial Statement that:

> at most, one of the 5 members of the Debtors' family (Edyta) resides part time at the Venado [New River] Property. The alleged part time use of the Venado [New River] Property is illegitimate and in bad faith, and is insufficient to transform such property into a homestead residence under Arizona law.[33]

The Court does not read this language as Wright's concession that Ms. Mailatyar resides at the New River Property. Rather, Wright contends *no one* in the Mailatyar family resided at the New River Property on the Petition Date and neither of the Debtors intended that the New River Property was their homestead on the Petition Date. The language quoted above is an alternative argument posed by Wright. While that argument is rejected below, the Court recognizes this "bad faith" argument was pled in the alternative to Wright's principal argument; namely that Debtors did not reside in the New River Property nor did they have the intent to reside there in the future at the time they filed this bankruptcy.

The Debtors' Closing Brief argues that the Debtors' good or bad faith in claiming the subject homestead exemption is *not* properly an issue currently before the Court when determining whether a claimed exemption should be approved by the Court. With this, the Court concurs. Although the Court finds the testimony of both Debtors in these bankruptcy proceedings lacking credibility, this is not to say their homestead exemption is denied because of their lack of candor to this tribunal.

In response to a question posed to the parties at the conclusion of the trial, the Debtors' Closing Brief contends the Debtors' actions or inactions subsequent to the Petition Date are irrelevant to the question of the Debtors' homestead intentions on the Petition Date. The Court agrees. The Debtors' intent *on* the Petition Date is the key question before the Court. The Debtors' post-Petition Date overt actions, failures to act,

---

[33] DE 177.

and subjective intentions are irrelevant in determining the Debtors' Petition Date homestead intentions. Evidence concerning post-Petition Date matters is irrelevant to Debtors' Petition Date intentions and will not be addressed in this Ruling.

Wright's Closing Brief argues, for the first time, that Wright holds an equitable lien against the New River Property, which lien is senior to any homestead exemption the Debtors may claim against that property. Wright contends the Debtors wrongfully obtained money from Wright and then used that money to reduce their obligations owed on the New River Property. This pay-down then increased the amount of equity existing over and above the first lien on that property. Wright cites Bankruptcy Judge Marlar's *In re Farnsworth*, 384 B.R. 842, 849 (Bankr. D. Ariz. 2008) decision, among others, for the proposition that an equitable lien defeats a homestead exemption where the lien was imposed due to the homeowner's misdeeds pertaining to the subject residence. All the cases cited by Wright pre-date the U.S. Supreme Court's case of *Law v. Siegel*, 571 U.S. 415 (2014). In *Law*, the Court held that a debtor's bad faith conduct may *not* stand as a basis to deny or surcharge a debtor's claimed homestead exemption. *Id*. *Law* casts a shadow over the continued viability of the cases cited by Wright. However, this Court need not reach the issue of the viability of those cases because the Court is resolving this matter on other grounds. Moreover, even if this Court overruled Wright's Homestead Objection, he correctly points out in footnote 2 to his Closing Brief that his equitable lien argument would need to be tested in an adversary proceeding.[34] Because this Court is ruling that Wright prevails on his Homestead Objection, his claimed equitable lien argument is moot and, in any event, not ripe before the Court for resolution.

---

[34] *See* Fed. Bankr. R. P. 7002(2).

## V. CONCLUSION

This Court finds the Debtors' testimony regarding their claimed homestead exemption was not credible. They moved out of the New River Property in the summer of 2016 because the lengthy lease of their Scottsdale Property had expired, it was not convenient to their work lives and family activities which were located in Scottsdale, and Ms. Mailatyar did not like living in New River. When the Debtors moved out of the New River Property, they abandoned that property as their homestead and reestablished the Scottsdale Property as their homestead.

Wright's Homestead Objection is sustained. The Debtors' homestead exemption claim is only proper on their Scottsdale Property. The bankruptcy stay is hereby lifted so that Wright may pursue his judgment lien remedies against the New River Property.

**DATED AND SIGNED ABOVE.**

To be Noticed through the BNC to:
Interested Parties

Mark J. Giunta
Liz Nguyen
Law Office of Mark J. Giunta
531 E. Thomas Rd., Suite 200
Phoenix, AZ 85012

Isaac M. Gabriel
Amelia B. Valenzuela
Quarles & Brady LLP
Renaissance One
Two N. Central Ave.
Phoenix, AZ 85004-2391

Nathan F. Smith
Malcolm Cisneros, a Law Corporation
2112 Business Center Drive
Irvine, CA 92612